Sophie M. MALTAIS, Individually and as Executrix of the Last Will and Testament of Arthur Maltais, Deceased, Plaintiff,

v.

UNITED STATES of America, Sweet Associates, Inc., General Dynamics (Electric Boat Division), General Electric Company, Northway Decking and Sheetmetals, Inc., West Side Structural Co., Inc., Clifton Steel Corp., Defendants.

UNITED STATES of America, Sweet Associates, Inc., General Dynamics (Electric Boat Division), General Electric Company, Northway Decking and Sheetmetals, Inc., and West Side Structural Co., Inc., Defendants and Third-Party Plaintiffs,

v.

CYCLOPS CORPORATION (Elwin G. Smith Division), Third-Party Defendant.

No. 77–CV–98.

United States District Court, N. D. New York.

July 14, 1982.

---

Martin, Noonan, Hislop, Troue & Shudt, Troy, N.Y., for plaintiff; Timothy Connick, J. Paul Troue, Troy, N.Y., of counsel.

Gustave DiBianco, U.S. Atty., Syracuse, N.Y., for U.S.; Paula Ryan Conan, Asst. U.S. Atty., Syracuse, N.Y., David R. Homer, Asst. U.S. Atty., Albany, N.Y., of counsel.

Maynard, O'Connor & Smith, Albany, N.Y., for defendant Sweet Associates, Inc.; Mae D'Agostino, Earl S. Jones, Jr., Albany, N.Y., of counsel.

Marvin & Frost, Rhinebeck, N.Y., for defendant Gen. Dynamics; Robert J. Marvin, Rhinebeck, N.Y., of counsel.

Lyons, Pentak, Brown & Tobin, Albany, N.Y., for defendant Gen. Elec.; Robert A. Murphy, Jr., William J. Pentak, Albany, N.Y., of counsel.

Lamb & Wilkins, Albany, N.Y., for defendant Northway Decking and Sheetmetals, Inc.; Edward A. McMahon, Albany, N.Y., of counsel.

Ainsworth, Sullivan, Tracy & Knauf, Albany, N.Y., for defendant West Side Structural Co., Inc.; Thomas F. Tracy, Albany, N.Y., of counsel.

O'Shea, Griffin, McDonald, Hurd & Stevens, Rome, N.Y., for third-party defendant Cyclops Corp. (Elwin G. Smith Div.); Gerald T. McDonald, Rome, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

In this action plaintiff seeks to recover damages for the personal injury and death of Arthur Maltais arising out of a construction site accident. The complaint is predicated upon the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, and New York tort law; jurisdiction is based upon 28 U.S.C. § 1346(b) and the doctrine of pendent jurisdiction, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Before this Court is the Government's motion to dismiss, Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment, Fed. R. Civ. P. 56. Also before the Court is General Electric's motion to dismiss as against all pendent party defendants in the event the claim against the United States is dismissed, Fed. R. Civ. P. 12(b)(1), or in the alternative, for summary judgment, Fed. R. Civ. P. 56.

### II

On June 9, 1975, Arthur Maltais, an employee of the Elwin G. Smith Division of the Cyclops Corporation (hereinafter "Cyclops"), while acting in the course of his employment, fell to his death from atop the S & G Administration and Training Building located at the Kenneth A. Kesselring site of the Knolls Atomic Power Laboratory (hereinafter "KAPL"), West Milton, New York. The building premises and site involved in this accident are owned by the United States.

Plaintiff alleges that these premises were in the possession and control of the United States, General Electric, General Dynamics, and Sweet Associates during the chain of events that led to decedent's death. Plaintiff further alleges that decedent, while in the process of installing insulated metal sid-ing, was handling a reinforcing bar installed near the edge of the roof of the building when the bar allegedly broke, causing decedent to fall approximately 40 feet.

Plaintiff maintains that Cyclops had entered into a subcontractor's agreement with Sweet Associates to install insulated metal siding on buildings at the Kesselring site and that Northway Decking and Sheet Metal Corp., Clifton Steel Corp., and General Steel Fabricators, Inc. were subcontractors and suppliers of steel and reinforcing bars used in the construction of buildings at the site. Moreover, these corporate defendants, as well as West Side Structural Co., are alleged to be responsible for furnishing and installing steel at the Kesselring site.

Letters Testamentary were issued on July 17, 1975 to plaintiff, decedent's spouse. On May 31, 1976, plaintiff filed a claim with the Energy Research and Development Administration (hereinafter "ERDA"—the successor to the now defunct Atomic Energy Commission) in accordance with the Federal Tort Claims Act. 28 U.S.C. §§ 2401(b), 2675. Following the denial of her administrative claim by ERDA on October 7, 1976, plaintiff commenced the present action on March 29, 1977, individually and as executrix of her husband's estate.

Plaintiff's first claim for relief seeks damages for negligence and is brought against the United States, General Electric, Sweet Associates, General Dynamics, Northway, West Side, Clifton, and General Steel. Plaintiff's second and third claims respectively seek damages for breach of warranty and strict products liability, and are brought only against the seven corporate defendants. Plaintiff's fourth claim, brought against all defendants, is predicated upon loss of consortium. Total damages are sought in the amount of $5,250,000.

### III

Precisely which defendants had the responsibility and authority to control and enforce safety measures at the Kesslering site is hotly contested by the parties. It is the Government's position that, in the con-

tract awarding GE the operation of KAPL, ERDA delegated to GE the responsibility to take reasonable safety precautions in the performance of the work under the contract.[1] *See* 42 U.S.C. §§ 2051(a) and (d), 2201.[2] Therefore, since the primary responsibility for safety was properly delegated to GE, as an independent contractor,[3] the Government claims that it is immune from suit under the FTCA, since the United States cannot be held liable in tort for acts of its independent contractor. *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

The Government further contends that, since § 2051 gives ERDA broad authority to contract with private entities for development projects and also directs ERDA to include in those contracts, "such health and safety provisions as the Commission may determine", *Crowther v. Seaborg,* 312 F.Supp. 1205, 1220 (D. Colo. 1970), the specific methods for arranging safety responsibility are within the total discretion of ERDA. ERDA, the Government maintains, in accordance with this statutory authorization, continued the AEC's general policy that management of its facilities would be carried out by independent contractors, rather than by ERDA employees. A part of that basic policy was and is the delegation of safety responsibilities to independent contractors. Therefore, the extent that ERDA undertakes to supervise the safety procedures of private contractors is a matter of policy and any decision to delegate—or not to delegate—safety supervision falls within the discretionary function exemption of 28 U.S.C. § 2680(a).[4]

Moreover, the Government asserts, plaintiff's utilization of New York Labor Law §§ 240 and 241[5] to impose strict tort liabili-

1. Clause 21 at page 59 of the Government contract with GE, contract no. W–31–109–ENG–52, provides:

    The contractor shall take all reasonable precautions in the performance of the work under this contract to protect the safety and health of employees and of members of the public and shall comply with all applicable safety and health regulations and requirements of ERDA. In the event that the contractor fails to comply with said regulations or requirements of ERDA, the Contracting Officer may without prejudice to other legal or contractual rights of ERDA, issue an order stopping all or any part of the work...

2. 42 U.S.C. § 2201 provides that the Commission (now ERDA) is authorized to promulgate safety regulations, 42 U.S.C. § 2201(b), and to delegate to the General Manager, or other officers, the function of promulgating those regulations, 42 U.S.C. § 2201(n).

    In § 2051 of the Act, Congress gave the Commission the broad discretion to contract with public or private institutions for research and development work, and also directed the AEC to include in those contracts "such provisions (1) to protect health, (2) to minimize danger to life or property, and (3) to require the reporting and to permit the inspection of work performed thereunder, as the Commission may determine." 42 U.S.C. § 2051(d).

3. Here, the direct responsibility for safety was expressly delegated to GE pursuant to the above statutory authority, and the enforcement responsibility was delegated by GE to each lower level contractor, which, in turn, delegated the responsibility to its subcontractors.

4. 28 U.S.C. § 2680(a) provides in part that liability should not be imposed on the basis of "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused."

5. N.Y. Labor Law § 240(1) provides in part:

    [A]ll contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

    N.Y. Labor Law § 241 provides in part:

    [A]ll contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:

    . . . . .

    6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed

ty on the United States would impose on ERDA a non-delegable duty to maintain a safe workplace and to conduct extensive safety inspections. Imposition of a non-delegable duty, the Government maintains, interferes with 42 U.S.C. § 2051 and the explicit delegation of safety precaution responsibilities to GE pursuant to contract. Therefore, it is alleged, the application of §§ 240 and 241 to the Government here would be in derogation of the Supremacy Clause of the Constitution.[6] Thus, based on the above three interrelated arguments, the Government moves for summary judgment.[7]

## IV

The Federal Tort Claims Act, 28 U.S.C. § 1346(b), provides:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Thus, the Act waives the sovereign immunity of the United States for the negligent acts or omissions of its employees, and subjects it to the same liability for such negligent acts or omissions that a private person would be subject to under the state law governing the location of the occurrence giving rise to liability.

However, since the waiver of sovereign immunity is limited to liability for negligent acts or omissions of its employees, the United States remains immune from certain species of liability which may be imposed upon private persons. Therefore, the United States cannot be held liable for a claim arising under the doctrine of strict or absolute liability without a showing of fault on the part of an employee of the United States. *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).[8]

Similarly, the United States cannot be held vicariously liable for the negligence of an independent contractor, since one of its own employees has not committed a negligent act or omission. *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). *See also Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).[9] The critical element in distinguishing a federal agency and an independent contractor is "the power of the Federal government to control the detailed physical performance of the contractor." *United States v. Orleans, supra,* 425 U.S. at 814, 96 S.Ct. at 1976.

Here, ERDA awarded GE the contract to operate the Knolls Atomic Power Laboratory. In that contract ERDA delegated to GE, pursuant to 42 U.S.C. § 2051, the responsibility to take reasonable safety precautions in the performance of the work under the contract. The primary safety responsibility, therefore, was properly delegated by the Government to GE, its independent contractor. *See Crowther v. Seaborg,* 312 F.Supp. 1205, 1220 (D. Colo. 1970). It is well settled that the contractual reser-

---

therein or lawfully frequenting such places. . . .

**6.** U.S. Const. Art. 6, cl. 2.

**7.** Since matters outside the pleadings are presented, the Government's motion shall be considered solely as one for summary judgment.

**8.** "It (FTCA) is to be invoked only on a 'negligent or wrongful act or omission' of an employee. Absolute liability . . . arises irrespective of how the tortfeasor conducts himself . . . The

degree of care used in performing the activity is irrelevant to . . . that doctrine. But the statute requires a negligent act." *Dalehite v. United States, supra,* 346 U.S. at 44–45, 73 S.Ct. at 972. *See also Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972).

**9.** Indeed, although the FTCA defines "employees of the government" to include "officers or employees of any federal agency", it specifically excludes from this definition "[a]ny contractor with the United States." 28 U.S.C. § 2671.

vation of the right to stop work, as is the case here, does not in itself create a duty in the Government. *Alexander v. United States*, 605 F.2d 828 (5th Cir. 1979); *Fisher v. United States*, 441 F.2d 1288 (3rd Cir. 1971); *Jennings v. United States*, 530 F.Supp. 40 (D.D.C. 1981). In other words, the mere fact that ERDA retained the right to stop work on the project for GE's failure to comply with the safety regulations is not enough to change GE's status as an independent contractor to that of an agent of the United States for purposes of the Federal Tort Claims Act. Indeed, it is clear that the day to day responsibility for supervision of the worksite was not retained by ERDA. Therefore, to hold the United States liable for the purported negligence of a contractor here would violate the proscription, first enunciated in *Dalehite*, against imposing accountability based on strict liability.

■ Furthermore, where the imposition of a non-delegable duty under state law would amount to imposition of absolute or strict liability, as is the case with New York Labor Law §§ 240 and 241, *see, e.g., Rea v. Albert Elia Bldg. Co., Inc.*, 79 A.D.2d 1102, 435 N.Y.S.2d 849 (4th Dep't 1981), the United States cannot be held liable under the FTCA for a claim arising under such a state law. *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *McGarry v. United States*, 370 F.Supp. 525 (D. Nev. 1973). *But see Thorne v. United States*, 479 F.2d 804 (9th Cir. 1973). This is so since, as stated, the United States cannot be held liable under the FTCA for a claim arising under the doctrine of absolute or strict liability absent a showing of fault on the part of United States employees. *Dalehite v. United States, supra*, 346 U.S. at 45, 73 S.Ct. at 972. Indeed, to hold the United States liable under §§ 240 and 241, despite federal statutory authority to delegate safety responsibility and authority to contractors, would encroach on the dictates of the Supremacy Clause. "[T]he constitution and the laws made in pursuance thereof are supreme; ... they control the constitution

and laws of the respective States, and cannot be controlled by them." *M'Culloch v. Maryland*, 4 Wheat. 316, 426, 4 L.Ed. 579 (1819). *See, e.g., Johnson v. Maryland*, 254 U.S. 51, 57, 41 S.Ct. 16, 16–17, 65 L.Ed. 126 (1920).

■ Finally, this Court agrees with the Government that ERDA's delegation of safety responsibility, pursuant to § 2051, is a discretionary act, as defined by 28 U.S.C. 2680(a), and therefore gives rise to an exemption from FTCA liability. "[T]he AEC may have considerable power to control the activities of private companies through contracts, but when the Commission decides the extent to which it will undertake to supervise the safety procedures of private contractors, it is exercising discretion at one of the highest planning levels." *Blaber v. United States*, 332 F.2d 629, 631 (2d Cir. 1964). *Bramer v. United States*, 412 F.Supp. 569 (C.D. Cal. 1976), *aff'd on other grounds*, 595 F.2d 1141 (9th Cir. 1979). Indeed, ERDA's reluctance to attempt to monitor day to day safety procedures, while it retains both the right of inspection and the right to stop work if serious violations are reported, demonstrates discretionary policy considerations which required a weighing of various concerns for public safety against administrative impracticability of maintaining a large inspection staff.[10] Therefore, the "policy balancing test", as enunciated in *Caban v. United States*, 671 F.2d 1230 (2d Cir. 1982), which exempted as "discretionary" only those activities in which the Government weighed competing policies in arriving at decisions has been met here by ERDA. Accordingly, the United States clearly is shielded from the sword of FTCA liability.

V

In view of the foregoing, the Government's motion for summary judgment is granted. With the elimination of the United States as a party defendant, the Court is constrained to exercise its discretionary authority to dismiss the pendent claims, and

**10.** *See* Immediate Action Directive 0504–33, issued December 20, 1973.

the motion by defendant General Electric for dismissal of the plaintiff's claims against the remaining defendants hereby is granted. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798, 807 n. 14 (2d Cir. 1979); *Palmer v. Ticcione,* 576 F.2d 459, 464 (2d Cir. 1978), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633.

It is so Ordered.